UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

MAHMOUD MAHRAN,

                              Plaintiff,

                                                            **DECISION AND ORDER**
         v.                                                        10-CV-715A

BENDERSON DEVELOPMENT
  COMPANY, LLC,[1]

                              Defendant.

## I.    INTRODUCTION

Pending before the Court are two motions, one by *pro se* plaintiff Mahmoud Mahran, and one by defendant Benderson Development Company, LLC ("Benderson"). Benderson has made a motion to dismiss plaintiff's complaint under Rules 12(b)(1), 12(b)(5), and 12(b)(6) of the Federal Rules of Civil Procedure ("FRCP"). Benderson believes that plaintiff failed to exhaust administrative remedies by never filing a discrimination complaint with either the Equal Employment Opportunity Commission ("EEOC") or the New York State Division of Human Rights ("NYSDHR"); that plaintiff did not name it properly[2] and

---

[1] The Clerk of the Court is directed to conform the caption of the case to the caption in this Decision and Order.

[2] In the complaint, plaintiff named "Benderson Development Inc." as defendant.

thus did not serve process correctly; and that plaintiff has not raised a cognizable claim in his allegations of a violation of confidential medical information. Meanwhile, plaintiff has made a motion for leave to file an amended complaint to allow him to add a claim that Benderson denied him participation in a 401(k) plan, in violation of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001–1461.

The Court has deemed the motions submitted on papers pursuant to FRCP 78(b). For the reasons below, the Court grants Benderson's motion in part and denies it in part. The Court also grants plaintiff's motion.

## II. BACKGROUND

This case concerns allegations that plaintiff resigned from his employment with Benderson because Benderson discriminated against him on the bases of religion and race, refused to accommodate his disability, and disclosed his confidential medical information to co-workers. The complaint does not contain a lot of factual detail but does set forth the following facts, which the Court will accept at face value for purposes of Benderson's motion. Plaintiff worked at Benderson's Buffalo office from January 3, 2006 to September 4, 2007. Plaintiff does not describe what his job at Benderson was, though it may have related to information technology since he described Benderson's Chief Information Officer

("CIO")[3] as his "direct boss." At unspecified times during plaintiff's tenure at Benderson, the CIO made unspecified "religious and racial comments" to him. Plaintiff complained about the presumably derogatory comments to human resource officials, but those officials took no action. This harassment may or may not have had anything to do with Benderson's decision to deny plaintiff participation in a 401(k) program, even though plaintiff qualified for participation upon completing one year of employment.

    Meanwhile, plaintiff applied for short-term disability leave at some point during his tenure. The complaint does not set forth why plaintiff sought disability leave or how long the leave lasted, but plaintiff's reference to returning to work on July 14, 2007 implies that Benderson granted the leave. Upon applying for disability leave, however, the CIO harassed plaintiff in an unspecified way. Two adverse events occurred when plaintiff returned from disability leave. First, plaintiff's co-workers harassed him about the medical basis for his disability leave. Since plaintiff had not told any co-workers about his health, he realized that "the defendant's representative"[4] disclosed his medical information to his co-

---

    [3] The Court does not know the CIO's name. Plaintiff identified the CIO's name in quotes as "Dave Hyzy." Benderson has not submitted any clarifying information in response.

    [4] The complaint does not clarify whether this representative had been a human resources official or someone else. Paragraph 10 of the complaint implies that this person was not the CIO, as the CIO was a recipient of the information.

workers. Second, Benderson denied plaintiff's request for a "light work schedule" to accommodate his disability. The CIO told plaintiff that he would be terminated if he could not "perform well," which presumably included working without whatever disability accommodations plaintiff sought. Plaintiff suffered "extreme mental and emotional anguish" as a result of all of Benderson's harassing conduct, which plaintiff described as creating a hostile work environment. The hostile work environment ultimately caused plaintiff to resign on September 4, 2007.

How plaintiff sought redress after his resignation is important because it affects some of his claims. Plaintiff never filed any kind of complaint with either the EEOC or the NYSDHR. Plaintiff waited almost exactly three years after his resignation to bring suit on August 30, 2010, serving the complaint on Benderson's corporate counsel at Benderson's Buffalo office. (*See* Dkt. No. 2.) When plaintiff commenced this action, he barely delineated any specific claims or theories of liability. Instead, plaintiff asserted in the fourth paragraph of the complaint that he was bringing the action under five different sources of statutory authority: the Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. §§ 2601–2654; the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101–12213; Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e to 2000e-17; the Fourteenth Amendment; and the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"), 110 Stat. 1936 (codified as

amended in scattered sections of U.S. Code).  Plaintiff then proceeded to plead the facts summarized above.

In lieu of answering, Benderson filed the pending motion to dismiss. Benderson advances several arguments in favor of dismissing plaintiff's claims. According to Benderson, plaintiff's Title VII and ADA claims should be dismissed because he never filed any charge of discrimination, let alone a timely one, with the EEOC or the NYSDHR.  Plaintiff's FMLA claim should be dismissed because plaintiff filed it past the standard two-year limitations period and because he has not alleged the willfulness necessary to trigger the special three-year limitations period.  Plaintiff's claim under the Fourteenth Amendment should be dismissed because he has not attributed any state action to Benderson.  Plaintiff's claim of a HIPAA violation should be dismissed because HIPAA has no private right of action.  Finally, all of plaintiff's claims should be dismissed, according to Benderson, because he did not name it correctly in the complaint and thus never completed proper service of process on his former employer.

Plaintiff has filed a response to each of Benderson's arguments for dismissal.  Plaintiff concedes that he never submitted any filings to the EEOC or the NYSDHR.  Nevertheless, plaintiff indicates that his ADA claim includes a claim for a violation of confidentiality of medical records, and that allegations related to confidentiality do not need to be submitted to an administrative agency.  Plaintiff defends his FMLA claim by asserting that Benderson's conduct

was sufficiently willful to fall under the special three-year limitations period, and not the general two-year limitations period. Plaintiff has withdrawn his claims under the Fourteenth Amendment and HIPAA. Finally, plaintiff asserts that he made a good-faith mistake in how he named Benderson in the complaint, and that his entire case should not be dismissed based on such a mistake.

The day after he responded to the motion to dismiss, plaintiff filed a motion for leave to file an amended complaint. Plaintiff casts his motion as an invocation of his right under FRCP 15(a) to amend his pleading once as a matter of course. The proposed amended complaint adds a few factual details to the narrative set forth in the original complaint. More importantly, the proposed amended complaint would convert the allegation about denied participation in Benderson's 401(k) plan into an explicit claim that denial of participation in the plan violated ERISA. Benderson takes no position on plaintiff's motion to amend but contends that the proposed amended complaint contains many of the same legal defects as the original complaint.

## III.  DISCUSSION

### A.  *FRCP 12 and* Pro Se *Litigants Generally*

Although Benderson has based its motion on more than one section of FRCP 12, the Court generally will proceed through its analysis under the familiar evidentiary standard of FRCP 12(b)(6), "construing the complaint liberally, accepting all factual allegations in the complaint as true, and drawing all

reasonable inferences in the plaintiff's favor." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002) (citation omitted). "A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal quotation marks and citations omitted). That said, however, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citation omitted).

    **B.** ***Plaintiff's FMLA Claim***

"The principal issue in this [claim], assuming *arguendo* that the behavior of [Benderson] in its treatment of [plaintiff] actually violated the FMLA, is whether that behavior was willful and hence subject to a three-year statute of limitations, *see* 29 U.S.C. § 2617(c)(2), or was not willful and therefore covered by a two-year statute of limitations, *see* 29 U.S.C. § 2617(c)(1)." *Porter v. N.Y. Univ. Sch. of Law*, 392 F.3d 530, 531 (2d Cir. 2004). The FMLA does not define "willful," but the Second Circuit in *Porter* adopted a definition that the Supreme Court used for the same term in the Fair Labor Standards Act.[5] "In common

---

[5] 52 Stat. 1060 (codified as amended in scattered sections of 29 U.S.C.).

usage the word 'willful' is considered synonymous with such words as 'voluntary,' 'deliberate,' and 'intentional.'  The word 'willful' is widely used in the law, and, although it has not by any means been given a perfectly consistent interpretation, it is generally understood to refer to conduct that is not merely negligent.  The standard of willfulness that was adopted in *Thurston*[6]—that the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute—is surely a fair reading of the plain language of the Act." *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988) (citation omitted); *see also, e.g., Young v. Cooper Cameron Corp.*, 586 F.3d 201, 207 (2d Cir. 2009) (citations omitted).

    Assessing the appropriate limitations period to apply to plaintiff's FMLA claim is somewhat difficult because plaintiff's FMLA claim does not pertain to medical leave in itself.  Plaintiff himself states in his complaint that he applied for short-term disability leave at an unspecified date and returned to work on July 14, 2007, implying that Benderson granted the application.  Plaintiff has not alleged any problems with the process of applying for and obtaining leave.  Rather, the core of plaintiff's FMLA claim seems to be that Benderson "willingly and intentionally shared Plaintiff['s] medical leave cause with plaintiff's direct boss and coworkers who upon Plaintiff's returns from his medical leave made

---

[6] *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111 (1985).

inappropriate comments and discussions [sic]." (Dkt. No. 1 ¶ 10.)

In short, plaintiff's claim pertains to a violation of the privacy of the medical information that he submitted to Benderson to secure his short-term disability leave. "Records and documents relating to certifications, recertifications or medical histories of employees or employees' family members, created for purposes of FMLA, shall be maintained as confidential medical records in separate files/records from the usual personnel files, and if the ADA, as amended, is also applicable, such records shall be maintained in conformance with ADA confidentiality requirements." 29 C.F.R. § 825.500(g). The confidentiality of any medical information that plaintiff submitted to Benderson when applying for leave is one of the rights protected under the FMLA. *See* 29 U.S.C. § 2615(a)(1) ("It shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter."). The FMLA permits private civil actions to enforce its provisions. *See id.* § 2617(a)(2)(A) ("An action to recover the damages or equitable relief prescribed in [Section 2615] may be maintained against any employer (including a public agency) in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of . . . the employees."); *see also Sista v. CDC Ixis N. Am., Inc.*, 445 F.3d 161, 174 (2d Cir. 2006) (holding that the FMLA creates a private right of action against any employer "should that employer interfere with, restrain, or deny the exercise of

FMLA rights") (internal quotation marks and citation omitted).  Under those circumstances, plaintiff explicitly has pled an intentional disclosure of medical information to his co-workers that caused him mental and emotional anguish.  As pled, Benderson knew or should have known about the confidentiality of any medical information that it reviewed when assessing plaintiff's leave application, but chose to disclose it anyway.  Whether plaintiff can prove his claim is another matter entirely, but his allegation of intentional conduct suffices to trigger the three-year limitations period and to survive dismissal at the pleading stage.  The Court thus denies Benderson's motion with respect to plaintiff's FMLA claim.

### C. *Plaintiff's ADA Claims*

Plaintiff has submitted two different claims that fall under the ADA.  First, the Court reads plaintiff's complaint to allege, as with his FMLA claim, a violation of the confidentiality of the medical information that he submitted to Benderson to secure his short-term disability leave.  Second, the Court reads plaintiff's complaint to allege that Benderson denied him reasonable accommodations such as a "light work schedule."

Plaintiff's first ADA claim is parallel to his FMLA claim and follows a similar analysis.  "A covered entity shall not require a medical examination and shall not make inquiries of an employee as to whether such employee is an individual with a disability or as to the nature or severity of the disability, unless such examination or inquiry is shown to be job-related and consistent with business

necessity." 42 U.S.C. § 12112(d)(4)(A); *see also* 29 C.F.R. § 1630.14(c) ("A covered entity may require a medical examination (and/or inquiry) of an employee that is job-related and consistent with business necessity. A covered entity may make inquiries into the ability of an employee to perform job-related functions."). Any job-related medical inquiries, such as for a leave application, must keep the medical information confidential, with limited exceptions that do not apply to co-workers. *See* 42 U.S.C. § 12112(d)(4)(C). Section 12112(d)(4)(A) creates its own private right of action that does not require proof of a disability. *See Conroy v. N.Y.S. Dep't of Corr. Servs.*, 333 F.3d 88, 94–95 (2d Cir. 2003) ("We agree with our sister circuits that a plaintiff need not prove that he or she has a disability unknown to his or her employer in order to challenge a medical inquiry or examination under 42 U.S.C. § 12112(d)(4)(A). In contrast to other parts of the ADA, the statutory language does not refer to qualified individuals with disabilities, but instead merely to 'employees.'") (citation omitted). This private right of action does not relate to employment discrimination, which means that it does not draw any authority from 42 U.S.C. § 12117, the enforcement provision of the ADA that tracks Title VII. *See* 42 U.S.C. § 12117 (making the enforcement provisions of Title VII the same enforcement provisions for ADA violations "alleging discrimination on the basis of disability . . . concerning employment"). Without any reliance on Section 12117, the private right of action for confidentiality violations does not require a

11

prior filing with the EEOC or the NYSDHR.  Plaintiff's failure to file with those agencies thus does not affect his allegation that Benderson intentionally disclosed confidential medical information related to his leave application.  As with the FMLA claim, plaintiff has given Benderson sufficient notice that it will have to defend how it handled plaintiff's information and to whom it made disclosures.  The Court thus denies Benderson's motion with respect to plaintiff's first ADA claim.

Plaintiff's second ADA claim is another matter, because it does allege discrimination in employment and does derive its authority from 42 U.S.C. § 12117 and the Title VII framework.  "A plaintiff filing a Title VII or ADA claim in federal court must exhaust administrative remedies by filing a timely complaint with the EEOC, unless the claim is 'reasonably related' to claims alleged in the complaint with the EEOC." *Mitchell-Miranda v. City of New York*, No. 08 Civ. 4031, 2011 WL 1210202, at *6 (S.D.N.Y. Mar. 24, 2011) (citing *Deravin v. Kerik*, 335 F.3d 195, 200–01 (2d Cir. 2003)).  Plaintiff simply never filed any complaint with the EEOC or the NYSDHR, and his attempt to distinguish his ADA confidentiality claim from the Title VII framework (Dkt. No. 7 at 2) all but explicitly concedes the lack of a filing.  Assuming for plaintiff's benefit that the latest date of discriminatory conduct was the date of his resignation on September 4, 2007, plaintiff needed to file a complaint with the EEOC by March 3, 2008 (180 days) or with the NYSDHR by June 30, 2008 (300 days).  *See* 42 U.S.C. § 2000e-

5(e)(1); *id.* § 12117 (incorporating the same deadline into the ADA); *Yoonessi v. State Univ. of N.Y.*, 862 F. Supp. 1005, 1013 (W.D.N.Y. 1994) (Arcara, *J.*) ("In a state such as New York with a state anti-discrimination agency, the complainant has 300 days to file a complaint with the EEOC or NYSDHR.  Absent a legitimate waiver, estoppel, or equitable tolling, failure to file an agency charge within the applicable time period precludes a plaintiff from bringing a Title VII suit in federal court.")  (citations omitted).  Plaintiff now is long overdue on his filing, meaning that his second ADA claim is time-barred.  The Court thus grants Benderson's motion with respect to plaintiff's second ADA claim.

      D.     *Plaintiff's Title VII Claim*

The Court's analysis of plaintiff's Title VII claim need only be brief, since it is identical to the analysis for plaintiff's second ADA claim.  Plaintiff alleges that Benderson unlawfully harassed him and created a hostile work environment on the basis of his religion and race.  Plaintiff needed first to present that allegation to either the EEOC or the NYSDHR but never did.  The time to file a complaint with either agency has long since passed, which means that plaintiff's Title VII claim now is time-barred.  The Court thus grants Benderson's motion with respect to plaintiff's Title VII claim.

      E.     *Plaintiff's Motion for Leave to Serve an Amended Complaint*

As noted above, plaintiff seeks leave to amend his complaint.  Plaintiff does not explicitly set forth why he needs an amended complaint.  In contrast to

the original complaint, though, the proposed amended complaint would add more factual allegations and, more importantly, a claim of an ERISA violation. Plaintiff cannot amend as a matter of course, as he has claimed, because he filed his motion a little more than 21 days after Benderson filed its motion to dismiss. *See* FRCP 15(a)(1)(B). Nonetheless, his motion triggers FRCP 15(a)(2) and its standard that this Court "should freely give leave when justice so requires." Additionally, "when addressing a *pro se* complaint, a district court should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Thompson v. Carter*, 284 F.3d 411, 416 (2d Cir. 2002) (internal quotation marks and citation omitted). Here, plaintiff will have to plead sufficiently, in any amended complaint, that Benderson owed him a fiduciary duty regarding a 401(k) plan and that his ERISA claim would be timely. *See, e.g., Heroux v. Ingrassio*, 612 F. Supp. 2d 236, 240–41 (W.D.N.Y. 2009) (Larimer, *J.*) (finding untimely a claim that an employer denied participation in a 401(k) plan); *see also* 29 U.S.C. § 1113 (setting forth limitations periods for ERISA claims). Since the Court cannot rule out the possibility of a sufficient pleading of an ERISA claim, it will allow plaintiff to file one amended complaint to flesh out that claim. Plaintiff shall file the amended complaint and proof of service within 60 days.

Since plaintiff has been granted leave to file an amended complaint, he shall name and serve Benderson in its proper name, Benderson Development

Company, LLC, and file appropriate proof of service.  Directing plaintiff to name Benderson properly will not cause any prejudice because Benderson already has been served through its corporate counsel at the correct address.  (*See* Dkt. No. 2.)  The Court thus denies Benderson's motion with respect to service of process.

## IV.   CONCLUSION

For all of the foregoing reasons, the Court grants Benderson's motion to dismiss (Dkt. No. 3) in part to dismiss plaintiff's Title VII and ADA discrimination claims.  The Court denies Benderson's motion in all other respects.  The Court grants plaintiff's motion for leave to file an amended complaint (Dkt. No. 8).  Plaintiff shall file both the amended complaint and proof of service within 60 days of entry of this Decision and Order.

SO ORDERED.

*s/ Richard J. Arcara*
HONORABLE RICHARD J. ARCARA
UNITED STATES DISTRICT JUDGE

DATED: April 18, 2011